# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JARED WADE HINMAN,<br><br>             Plaintiff,<br><br>v.<br><br>DARREN GALLOWAY,<br>LATOYA HUGHES,<br>ZACK LOVE,<br>CLAYTON STEPHENSON,<br>C. HOUSEMAN,<br>ANDREW CAUSEY,<br>ASHLEY ONEAL,<br>DR. DAVID,<br>CHRISTINE ROPER,<br>MELISSA LITRELL,<br>GENTLES,<br>LT. BRADFORD,<br>L. REED,<br>LT. HORN, and<br>C/O PIND,<br><br>             Defendants. | Case No. 24-cv-02646-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

      Plaintiff Jared Wade Hinman, an inmate in the custody of the Illinois Department of Corrections (IDOC) who is currently incarcerated at Shawnee Correctional Center (Shawnee), brings this civil action pursuant to 42 U.S.C. §1983 for violations of his constitutional rights. The First Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

## THE FIRST AMENDED COMPLAINT

Plaintiff alleges the following: In December 2022, Plaintiff refused to take a tuberculosis (TB) skin test due to religious reasons and requested that he be given a blood test instead. (Doc. 12, p. 9). Plaintiff's request was denied. He was taken to the restrictive housing unit (RHU)/segregation and issued a disciplinary ticket for "failure to submit to forensic or medical screening." While in segregation, he repeatedly asked why he was in segregation rather than the quarantine wing. After being held in segregation for two weeks, Plaintiff was placed in "receiving's RHU," until January 2023, when he was given a cellmate and placed in cell 4D69. After a few days in cell 4D69, he again refused a TB skin test and asked for a blood test. Plaintiff was issued another disciplinary report and returned to the RHU for refusing to submit to forensic or medical screening. Two weeks later, he was placed in receiving's RHU, where he remained until November 2023. (*Id.*).

In June 2023, while still in receiving's RHU, Plaintiff was further penalized for refusing the TB test by being placed on "no movement status" by Internal Affairs Officer Pind. (Doc. 12, p. 9-10). From June through November 2023, Plaintiff was kept in his cell and refused any exercise time outside of his cell, phone access, kiosk access, and visitation time. He received his meals in his cell twice a day, and sometimes he was fed only once a day. Plaintiff was allowed to shower only every 8-10 days. On one occasion, Plaintiff was allowed to go to the day room, but after being there for three minutes, Correctional Officer Horn "charged" into the day room yelling, "Lock him back down! [Plaintiff] doesn't come out of that cell for anything! I don't care if he is dying, the nurse can come to him." Towards the end of October, Correctional Officer Johnson would occasionally let Plaintiff out of the cell. Plaintiff heard Johnson say, "I'm not punishing him anymore." (*Id.*).

Plaintiff complained to medical staff about back pain, joint pain, and body aches caused by

the lack of movement and atrophy of his muscles. (Doc. 12, p. 10). He would ask for medical staff to prescribe exercise, but the medical staff denied his requests. Plaintiff filed several grievances about his situation. The grievances were denied by Counselor Houseman, and frequently the grievances disappeared altogether. (*Id.*).

Plaintiff describes Director of Nurses Ashley Oneal, Nurse Christine Roper, and Nurse Melissa Litrell as "toxic." (Doc. 12, p. 11). These Defendants told Plaintiff that it was Dr. David who was refusing to give him the blood test in lieu of his TB skin test and that the blood test was not available at Shawnee. (*Id.* at p. 4-5, 11). Oneal, Roper, and Litrell wrote Plaintiff false disciplinary reports for refusing the TB skin test based on his religious beliefs. (*Id.*). Plaintiff states that Dr. David signed reports regarding the blood test option recording, "We don't do that here," and "It's a pilot program only at IDOC R & C Centers." (*Id.* at p. 4). Plaintiff asserts that these statements are false and that the blood test was available at Shawnee "all along." (*Id.*).

The health care administrator, Gentles, responded to Plaintiff's grievances stating that she had "no control over unit discipline" and that Plaintiff was being "treated according to our policy (A.D.) and DR 504." (Doc. 12, p. 5). Plaintiff states that she knew that the blood test was available and had the authority to order that the blood test be performed but failed to do so. (*Id.*).

Once medical staff started issuing Plaintiff disciplinary reports, the disciplinary reports were originally thrown out by J. Johnson Jr. (Doc. 12, p. 11). The the disciplinary reports, however, were eventually deemed major offenses by various majors and lieutenants. (*Id.*). Lieutenant Bradford and Correctional Officer Reed on the Adjustment Committee found Plaintiff guilty of the disciplinary reports and penalized Plaintiff for asking for a blood test due to his religious beliefs, rather than the traditional TB skin test. (*Id.* at p. 5).

Eventually, one of Plaintiff's grievances was affirmed. (Doc. 12, p. 12). His disciplinary reports were expunged, he was given a blood test, and he was placed back into general population

in November 2023. (*Id.*).

In February 2024, Plaintiff was allowed to go yard for the first time. During yard, he injured himself while lifting weights. Plaintiff was not given an x-ray for months and has "been given little to no treatment since." (Doc. 12, p. 12). He has received only pain killers and one physical therapy session. Plaintiff's back pain persists, and his request slips seeking medical appointments for back pain "mysteriously" are not received by staff. (*Id.*).

## PRELIMINARY DISMISSAL

The Court dismisses any claims Plaintiff is bringing in connection with his allegations that he has been denied adequate care for his back injury sustained in February 2024. The only defendant associated with these allegations is Health Care Administrator Gentles. (Doc. 12, p. 5). In his description of Gentles, Plaintiff writes "also refusing care for back." (*Id.*). This is insufficient to state a claim. While detailed factual allegations are not required to meet the pleading standards under Federal Rule of Civil Procedure 8, the Plaintiff must allege more than the "defendant-unlawfully-harmed-me." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Also, Gentles cannot be held liable solely because she is in a position of authority, as there is no respondeat superior under Section 1983. *See Doe v. Purdue Univ.*, 928 F. 3d 652, 664 (7th Cir. 2019). For these reasons, Plaintiff has failed to state a claim against Gentles or any other Defendant regarding denial or delayed care for his back, and any such claims are dismissed without prejudice.

The Court also dismisses all claims against Defendants Love, Stephenson, Hughes, Housemen, and Causey. Plaintiff attempts to assert liability against these individuals solely on basis fact that they reviewed and denied or mishandled his grievances. (Doc. 12, p. 10-11). It has long been held that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to a violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (explaining that "[o]nly persons who cause or participate in the violations are responsible"). Furthermore, the

alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Because Plaintiff has not sufficiently pled that Love, Stephenson, Hughes, Housemen, and Causey were personally involved in any of the alleged constitutional violations outside of their role in the grievance process, any claims against them are dismissed without prejudice.

## DISCUSSION

Based on the allegations and Plaintiff's articulation of his claims in the First Amended Complaint, the Court designates the following counts:

**Count 1:** Eighth Amendment claim against Pind, Horn, and Galloway for subjecting Plaintiff to unconstitutional conditions of confinement from December 2022 through November 2023.

**Count 2:** First Amendment free exercise of religion claim against Galloway, Oneal, Roper, Bradford, Reed, Litrell, Pind, David, Gentles, and Horn for punishing Plaintiff for refusing to take a TB skin test because of his religious beliefs

**Count 3:** Religious Land Use and Institutionalized Persons Act (RLUIPA) claim against Galloway, Oneal, Roper, Bradford, Reed, Litrell, Pind, David, Gentles, and Horn for punishing Plaintiff for refusing to take a TB skin test because of his religious beliefs.[1]

**Count 4:** First Amendment claim against Galloway, Oneal, Roper, Bradford, Reed, Litrell, Pind, David, Gentles, and Horn for retaliating against Plaintiff because of his religion.

**Count 5:** Fourteenth Amendment claim against Oneal, Roper, Litrell, Bradford, and Reed for disciplining Plaintiff for refusing to take a TB skin test for religious reasons without due process.

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed**

---

[1] This Court generally construes a state inmate's complaint that his religious rights are being infringed upon as implicating claims under the First Amendment and RLUIPA.

**without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

### Count 1

Plaintiff claims that from December 2022 through November 2023, he was placed in segregation and beginning in June 2023 held in his cell on "no movement status" at the direction of Internal Affairs Officers Pind and Horn. (Doc. 23, p. 5-6, 10). During this time, he was kept in his cell for excessive lengths of time. He was forced to eat in his cell and was not allowed to (1) leave for exercise; (2) have visitors; (3) use the phone; or (3) access the kiosk. Plaintiff was only allowed to shower every 8-10 days. (*Id.* at p. 10). Plaintiff asserts that Warden Galloway was aware of his housing situation because Galloway received Plaintiff's grievances, did several walkthroughs of the area where Plaintiff was celled, and authorized Plaintiff's cell placement. (*Id.* at p. 2). Plaintiff claims that Galloway not only authorized his cell placement but failed to intervene and order that he no longer be housed in segregation on "no movement status." (*Id.* at p. 2, 11). These allegations are sufficient for Count 1 to proceed against Pind, Horn, and Galloway. *See James v. Pfister,* 708 F. App'x 876, 879 (7 Cir. 2017) (citing *Turley v. Rednour*, 729 F.3d 645, 652 (7th Cir. 2013); *Delaney v. DeTella*, 256 F.3d 679, 683–85 (7th Cir. 2001); *Pearson v. Ramos*, 237 F.3d 881, 884 (7th Cir. 2001); *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996)).

### Count 2

It is well-established that "a prisoner is entitled to practice his religion insofar as doing so does not unduly burden the administration of the prison." *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir. 1990). To state a claim under the free exercise clause of the First Amendment, a plaintiff must allege facts to plausibly suggest that his "right to practice [his chosen religion] was burdened in a significant way." *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005).

---

[2] *See Bell Atlantic Corp.,* 550 U.S. at 570.

Plaintiff claims that he refused the TB skin tests for religious reasons and was not provided a blood test instead. Because he refused the TB skin tests he was punished – he was transferred to segregation, placed on "no movement status," issued disciplinary reports, and repeatedly found guilty of the charges in the disciplinary reports. These allegations are sufficient for Count 2 to proceed against Defendants Galloway, Pind, Horn, David, Oneal, Roper, Litrell, Gentles, Bradford, and Reed.

### Count 3

Inmates are afforded broader religious protections under RLUIPA than the First Amendment, which prohibits prisons receiving federal funds from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C.A. § 2000cc-1; *Schlemm v. Wall,* 784 F.3d 362, 363 (7th Cir. 2015). Under RLUIPA an inmate can obtain injunctive relief but not monetary damages against state employees in their personal capacity. *See Grayson v. Schuler,* 666 F. 3d 450, 451 (7th Cir. 2012); *Neely-Bey Tarik-El v. Conley,* 912 F. 3d 989, 1004 n. 46 (7 Cir. 2019).

Here, Plaintiff sues individual Defendants in their personal capacities for monetary damages, which is not authorized under RLUIPA. Accordingly, Count 3 is dismissed.

### Count 4

Plaintiff claims that his transfer to segregation, his placement on "no movement status," the issuance of and finding of guilty for disciplinary reports, and the denial of a blood test in lieu of a TB skin test was the result of retaliation against him for practicing his religion. (Doc. 12, p. 12). At his point, Plaintiff's facts are sufficient to plead a First Amendment retaliation claim against Galloway, Oneal, Roper, Bradford, Reed, Litrell, Pind, David, Gentles, and Horn. *See*

*Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996).

### Count 5

Plaintiff claims the Oneal, Roper, and Litrell wrote him false disciplinary reports for refusing a TB skin test when he in fact did not refuse testing but asked for an alternative test. (Doc. 12, p. 4-5). Adjustment Committee Members, Bradford and Reed, found Plaintiff guilty of the false disciplinary reports and penalized him. (*Id.* at p. 5, 11).

"The Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property." *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). When an inmate raises a procedural due process claim based on false charges and related to disciplinary proceedings, the Court undertakes a two-part analysis. *Id.* The Court first evaluates whether the prisoner was deprived of a protected liberty interest, and then second, evaluates whether the process he was afforded was constitutionally deficient. *Id.* (citing *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016)).

Because Plaintiff claims that he served almost twelve months in segregation where he was allowed minimal time outside of his cell, the Court finds that he has pled the deprivation of a liberty interest. He has also sufficiently pled that he was afforded constitutionally deficient procedures prior to being punished with segregation. In a situation where an inmate complains of discipline such as segregation, or anything other than the loss of good-time credit, the disciplinary proceedings are subject to an informal due process inquiry. Informal due process requires that an inmate is provided (1) notice of the reasons for his placement in segregation, and (2) an opportunity to present his views in a written statement or hearing. *Ealy v. Watson*, 109 F.4th 958, 965 (7th Cir. 2024). Informal due process also requires an impartial decisionmaker. *See Westerfer v. Neal*, 682 F. 3d 679, 686 (7th Cir. 2012).

Plaintiff's allegations allow the plausible inference that Bradford and Reed were not

impartial when conducting the disciplinary hearing. Plaintiff states that Defendants' conduct was due to retaliation for practicing his religion by refusing the TB skin test. Accordingly, Count 5 will proceed against Oneal, Roper, Litrell, Bradford, and Reed.

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a motion asking the Court to recruit counsel on his behalf. Pursuant to 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." (Doc. 13). When faced with a motion for recruitment of counsel the Court applies a two-part test: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote,* 503 F.3d 647, 654 (7th Cir. 2007).

In an attempt to find a lawyer on his own, Plaintiff states that he sent letters to three separate civil rights attorneys. He has received a declination letter from one firm but has not heard back from the others. Along with his motion, he has attached a copy of the declination letter, a copy of the letter he sent to the attorneys, and two copies of his authorization for payment of postage. As for his abilities to proceed pro se, Plaintiff claims that he cannot represent himself because he is not well versed in the law, and he has limited access to the law library. He states that he does not know how to use the law library effectively beyond typing and e-filing.

Although Plaintiff has demonstrated reasonable efforts to recruit counsel, the Court finds that Plaintiff is capable of representing himself for now. Plaintiff has a GED, the First Amended Complaint survived screening, and he has demonstrated an ability to prepare and file pleadings, motions, and correspondence in this matter. There is also little to no legal research that needs to be done at this stage. Given these considerations, the Motion for Recruitment of Counsel is **DENIED**. (Doc. 13).

## DISPOSITION

For the reasons set forth above, the First Amended Complaint survives preliminary review pursuant to Section 1915A. (Doc. 12). All claims intended to be brought against Love, Stephenson, Hughes, Houseman, and Causey are **DISMISSED without prejudice.** The Clerk of Court shall terminate these individuals as defendants on the docket. **COUNT 1** will proceed against Pind, Horn, and Galloway. **COUNT 2** will proceed against Galloway, Oneal, Roper, Bradford, Reed, Litrell, Pind, Dr. David, Gentles, and Horn. **COUNT 3** is **DISMISSED without prejudice**. **COUNT 4** will proceed against Galloway, Oneal, Roper, Bradford, Reed, Litrell, Pind, Dr. David, Gentles, and Horn. **COUNT 5** will proceed against Oneal, Roper, Litrell, Bradford, and Reed.

The Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for Defendants Galloway, Bradford, Reed, Pind, Horn, Dr. David, Oneal, Roper, Litrell, and Gentles the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to each defendant's place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed

above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and (if applicable) his or her attorney were deemed to have entered into a stipulation that any unpaid costs taxed against the applicant shall be paid from any recovery secured in this action.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   September 23, 2025**

                                          *s/Stephen P. McGlynn*
                                          **STEPHEN P. MCGLYNN**
                                          **United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.